107 P.2d 123

In re ATCHISON, T. & S. F. RY. CO.'S PROTEST OF RATES.

No. 4565.

Supreme Court of New Mexico.

Oct. 23, 1940.

Reid & Iden, of Albuquerque, and Charles H. Woods, R. S. Outlaw, and Thomas F. King, all of Chicago, Ill., for respondent Atchison, T. & S. F. Ry. Co.

Donovan N. Hoover, of Santa Fe, for motor carriers, protestants.

MABRY, Justice.

This case is before us on removal from the State Corporation Commission, upon a record showing an incompleted hearing, but one which the Commission and protestants claim is sufficient for the purposes of the case.

The Atchison, Topeka and Santa Fe Railway Company, undertook to publish a tariff showing reduced rates intrastate in New Mexico to meet what the company called the competitive rates of Motor Carriers operating interstate and intrastate in New Mexico. The tariff was published to become effective April 2, 1940, but on protest of the New Mexico Motor Carriers Bureau, Incorporated, prior to such date, a hearing was had before the State Corporation Commission on the question, of whether the proposed rates should be permitted to become effective as scheduled. This hearing was opened on March 29, 1940, and considerable testimony taken. The hearing was not closed, however, but an adjournment was had and continuance granted the railway company until June 24th, 1940, in order to permit it to secure and assemble data and evidence desired by the Commission upon the question of establishing the compensatory nature of the proposed rates published, and for other purposes. Upon the adjournment of the hearing, the Commission, over the protest of respondent railway company, and without a full and complete hearing, entered an order suspending the rates so published and to become effective on April 2nd, the suspension to continue until further hearing by and order of the Commission. This order was ignored by the respondent company and the Commission removed the case

here for hearing looking to the enforcement of the order.

The Motor Carriers Bureau, hereinafter to be referred to as protestants, challenged the proposed tariff and schedule of rates as being discriminatory, preferential and prejudicial. Discriminatory and preferential in that all points in the state upon its lines were not given the benefit of the proposed new and lower rates, and prejudicial to the protestants because such rates were non-compensatory, and were to be established only at certain preferential points, suggestive of a rate war with protestants.

The railway company, hereinafter to be referred to as respondent, contends that the case before the Commission is one to determine the reasonableness and fairness of the proposed rates so published, and that the Commission is without authority to suspend such proposed rates until the hearing thereupon has been concluded and the protestants have sustained the burden of proof of showing the rates to be unreasonable and unjust. Since the respondent company refused to obey the order of the Commission, the tariff and new and reduced rates as to the points in question were put into effect as scheduled and published, on April 2, 1940, and the Commission removes the case to this court under authority of Section 7, Article XI, of the New Mexico Constitution, authorizing such removals to this court for the purpose of a hearing upon the record made and securing obedience to the order of the Commission ·

The question presented is whether or not the State Corporation Commission has the power under the Constitution and laws of the state to suspend rates published by a rail carrier prior to their effective date, upon an incomplete hearing upon the question of whether the rates are reasonable and just, even though evidence presented up to the time of the continuance of hearing might be sufficient to establish a prima facie case in favor of the protestants.

Respondent company takes the position that the hearing before the Commission is still pending, that there has been in fact no final and completed public hearing as enjoined upon the Commission by Section 8, Article XI, of the New Mexico Constitution, and that any order it now attempts to enforce is void and of no effect.

It is apparent from Section 7, Article XI of the Constitution that the Commission, having power to fix, determine, supervise, regulate and control all charges and. rates of railway and other transportation companies, and having the power to change and alter such rates, to the end that such rates shall not be "unjust, excessive or unreasonable", it has the power to fix or revise rates and charges *downward* in the interest of the public. But, it may not be so apparent, as is suggested by respondent, that the Constitution makers reposed in the Commission the power to revise *upward* a rate of which a competing carrier complains as being too low, and which it cannot meet. But, this question is not at this time before us and is therefore not decided.

Respondent relies upon the case of In re Coal Rates in New Mexico, 23 N.M. 704, 171 P. 506, wherein it was held that no burden rests upon a railway company or a public utility corporation to justify a rate or a proposed tariff.

Protestants, the motor carriers, urge upon us a consideration of the fact that some evidence had been introduced by both the protestants and respondent going to the question of the justness and reasonableness of the rates proposed, and that upon an examination of the whole of the uncontradicted evidence so received, a prima facie case is made for the protestants; and, the Commission was, therefore, upon the condition of the record then, justified in entering its order of suspension pending a final determination of the case. We are wholly unimpressed with such argument whether the adjournment of the obviously incompleted hearing was at the instance of one party or the other, a point upon which the parties do not agree. Under the circumstances of this case as disclosed by the record before us, we are asked by the protestants and the Commission to suspend and vacate the proposed rates and tariff of the company. This is urged because it may be said that the evidence produced by the protestants up to the point of adjournment, including some offered on behalf of the respondent company, is sufficient to sustain the burden the protestants bear to show the rates proposed are discriminatory, unreasonable, preferential and prejudicial.

■ Such partial and incomplete hearing, under the circumstances, is not a compliance with the constitutional provision which prohibits the determination of any question or the issuance of any order by the Commission until after a "public hearing" upon notice. The constitutional provision here referred to (Sec. 8, Art. XI) reads: "The commission shall determine no question nor issue any order in relation to the matters specified in the preceding section, until after a public hearing held upon ten days' notice to the parties concerned, except in case of default after such notice." We said in Woody v. Denver & R. G. R. Co., 17 N.M. 686, 132 P. 250, 47 L.R.A.,N. S., 974, that an order against a company which has not been given the hearing provided for in this section is unenforcible.

■ The following propositions may be taken as admitted: (1) Any common carrier has the unquestioned right to place in effect a new rate or tariff without having secured the consent of the Commission. (2) If thereafter, objection or protest against said rate or new tariff be made by any interested party entitled to object thereto, the carrier is not called upon in the first instance to sustain by evidence the reasonableness or fairness of the said rate or new tariff, but the burden is upon the Commission, or interested party objecting, to produce evidence striking down said rate or new tariff. In re Coal Rates in New Mexico, 23 N.M. 704, 171 P. 506. (3) The Commission after a public hearing (Sec. 8, Art. XI, Const.) has the unquestioned power to annul or vacate said new rates or tariff. But it must sustain the burden of showing, after a full and completed hear-

ing, that the rates should be annulled or vacated.

■ From the foregoing it seems altogether illogical and unreasonable to say that the Commission may, in the absence of a public hearing at which all the competent and material evidence sought to be presented by the interested parties has been produced, prematurely, and without such full hearing, suspend rates put into operation by the carrier. As we understand the words thus employed in the constitution, a "public hearing" means a "completed" public hearing.

■ We have said that, though we must consider the question which is brought to us by removal on the part of the corporation Commission upon the evidence already taken and without the aid of other evidence, this is not a denial of due process, since the parties affected have the right on the original hearing to introduce evidence as to all material points. Seward v. Denver & R. G. R. Co., 17 N.M. 557, 131 P. 980, 46 L.R.A.,N.S., 242. However, were we to hold that the Commission could suspend the rates and tariff proposed, upon a partial and incomplete hearing when the case was not completed but adjourned merely in aid of the Commission's effort to secure further evidence deemed helpful by it in a determination of the question, it is timely to suggest that a more serious view would have to be taken of any challenge that due process was denied. The company might thus be foreclosed to produce before us all or some part of their case in defense of their position.

We said In re Coal Rates in New Mexico, supra [23 N.M. 704, 171 P. 507]: "Under the Constitution, orders of the commission, before being enforceable, must be passed upon by the Supreme Court; and in the case of Seward v. D. & R. G. R. Co., 17 N. M. 557, 131 P. 980, 46 L.R.A.(N.S.) 242, and Woody v. D. & R. G. R. Co., 17 N.M. 686, 132 P. 250, 47 L.R.A.(N.S.) 974, we held that by such requirement it was intended that such orders could not be held valid and enforced by the court, unless based upon sufficient evidence heard by the commission and preserved in the record."

And further in this opinion we said: *"Neither by the Constitution nor by statute is the commission given the power to suspend a proposed tariff,* and in no event is the burden cast upon the railway company or public utility corporation to justify a rate or proposed tariff. The burden rests upon the commission to produce evidence warranting its action in fixing a rate, or other action taken. This being true, the common carriers were not in default in this case." (Italics ours)

■ In the Woody case, supra [17 N. M. 686, 132 P. 253, 47 L.R.A.,N.S., 974], we said: "It is the duty of the Commission to develop such evidence as will show that the order made by it is reasonable and lawful." Certainly it cannot be said that the Commission has "developed" the evidence when it has progressed with the hearing only far enough that there can be found uncontradicted evidence which may be believed by the fact finders to support the effort of protestants to strike down

the rate as being unreasonable or unjust. It is intended that the findings shall be upon all the evidence developed in the *completed,* as distinguished from an *adjourned,* hearing. "At such hearings the burden of proof is upon the commission, and it is the duty of the commission to present evidence as to all such facts as are necessary to enable. the court to determine the reasonableness and justice of the order. Unless the record contains evidence satisfying this requirement, the order will not be enforced. * * *" State Corp. Comm. v. Atchison T. & S. F. Ry. Co., 32 N.M. 304, 307, 255 P. 394, 395.

Protestants, as we understand their position, agree to the general statement that the "hearing" is not completed in the sense in which the term is generally understood, but point out that, here, other considerations should control, since it is only a temporary suspension of the rates that is ordered. A most liberal interpretation of the constitutional provision, in the light of the In re Coal Rates case, supra, would not justify our holding that under the circumstances and upon a record, though partial, such as are here present, relief could be afforded by maintaining the status quo while the governmental agency, upon which the duty to ascertain the truth of the challenge to the proposed new rates, was completing its inquiry and concluding the hearing. Such a holding would be in direct conflict with what this court has heretofore said.

The protestants contend that a prolonged hearing that must await the outcome of the fact finders' conclusion based upon the whole record, when a partial record of irrefutable evidence will suffice as having satisfied the burden imposed, would do grave injustice to those entitled to complain and who would be injured by the application of the questioned rates, which might be eventually set aside. That may all be true. But, likewise, in the event the suspended rate should thereafter on a completed hearing be declared just and reasonable, the carrier may have suffered prejudice by the suspension.

The Commission was without authority to make and enter the order of suspension and this court will therefore refuse to enforce such order. And, it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.